THE PEOPLE ex rel. EDWARD WALSH, Respondent, *v.* WILLIAM F. SMITH et al., POLICE COMMISSIONERS, ETC., Appellants.

The effect of the provision of the New York charter of 1870 (§ 47, chap. 137, Laws of 1870), fixing the salaries of the officers in the police department at the amount then paid to the officers holding such offices (see, also, similar provision of charter of 1873, § 43, chap. 335, Laws of 1873), was to abrogate the provision of the act of 1866 (§ 1, chap 861, Laws of 1866), regulating the salaries of members of the Metropolitan Police Department, which provided "that whenever the currency of the United States shall attain a par value in gold," the salaries therein fixed "shall be reduced twenty per cent."

Accordingly *held,* that the relator, a captain of police, after January 1, 1879, when such currency became at par with gold, was entitled to the same salary as before; and that upon refusal of the board of police to pay more than the salary as reduced by said provision, relator was entitled to a writ of mandamus to compel payment of the residue.

(Argued April 22, 1879; decided May 20, 1879.)

APPEAL from order of the General Term of the Supreme Court, in the first judicial department, affirming an order of Special Term, which directed the issuing of a peremptory writ of mandamus directed to defendants — the police commissioners constituting the board of police of the city of New York — commanding them to pay to the relator an unpaid balance of his salary, claimed to be due for the month of January, 1879. (Reported below, 17 Hun, 286.)

Previous to and during the said month of January, the relator was a captain of police. Prior to January first he had been paid monthly at the rate of $2,000 per annum. On said first of January the currency of the United States became at par with gold, and defendants refused to pay more than at the rate of $1,800 per annum, claiming that by virtue of the act, chapter 861, Laws of 1866 (§ 1), the salary was reduced to that sum. This sum was received by the relator under protest.

Further facts appear in the opinion.

*James Emott, Theodore W. Dwight* and *Charles MacLean,* for appellants. The act of 1873 (chap. 755) repealed by implication the repealing clause in section 119 of the charter, and as such revived the provisions originally repealed. (*People* v. *Davis,* 61 Barb., 456; *Wheeler* v. *Roberts,* 7 Cow., 536; 1 Black. Com., 90; *Church* v. *Marsh,* 4 E. D. S. 369.)

*A. J. Vanderpoel, George Bliss, John D. Townsend* and *Elihu Root,* for respondents. The salaries and pay of the relators were fixed by the provisions of section 47 of the act of 1870. (*Quinn* v. *Mayor,* 63 Barb., 595; 53 N. Y., 627; *Taylor* v. *Mayor, etc.,* 67 id., 87.)

Danforth, J. The appellants in this case were directed by mandamus to pay the relator the difference between the salary claimed by him and that conceded by the appellants to be his due. The question before us is as to the correctness of the claim made by him and must be ascertained by comparing it with the provisions of the statutes fixing the compensation of the police force of the city of New York. They are found in chapter 861, Laws of 1866, entitled "an act to regulate and increase the salaries of certain members of the metropolitan police department." (Chap. 137, Laws of 1870, and chapters 335 and 755, Laws of 1873.)

The relator Walsh was a captain of police and the effect of the provision of section one of the act of 1866 was such that from the first of May next after its passage whoever held that office became entitled to receive an annual salary or compensation of $2,000, but by the same section it was declared that whenever the currency of the United States should attain a par value in gold, the salary thus fixed should be reduced twenty per cent, but not below $1,800 per annum. It is a fact conceded in this case that the event thus referred to happened on the 1st of January, 1879, and it is claimed by the appellants that thenceforward the salary of the relator was only $1,800 and not $2,000 per annum. On the other

hand it appears that by the act of 1870 changes were made in the department of police, but none in regard to the officer in question who was transferred by operation of the act to the department thereby created, and it was declared by section forty-seven " that the amount of salary or compensation now paid to such person   *   *   *   shall be the salary and compensation fixed for his transferred office under this act." At that time the salary paid to the relator and to which he was legally entitled was $2,000, and I am unable to discover anything in the statutes relating to this subject which permits any other construction than one which gives to the relator the full sum claimed by him. The act of 1873 strengthens this conclusion. By its provisions (§ 43) every person connected with the police department of the city of New York at the time the act took effect, was continued in office, and it declares that " the amount of salary   *   *   * now legally paid to such person " (subject to certain exceptions not affecting the relator) " shall be the salary   *   *   *   fixed for his office under this act." In neither of these acts is there any reference to the provision of the act of 1866 above cited and which relates to the reduction of the salaries of persons named in it. I have carefully considered the ingenious argument of the learned counsel for the appellants but can see no reason why the words " now paid " should not be given full force and taken literally.

It is evident that both in 1870 and 1873 the provisions of the act of 1866 were before the Legislature; it must be deemed to have contemplated each clause and sentence and we have no right to infer that the omission to incorporate the words which made the amount of salary depend upon the financial credit of the government was other than intentional. Yet in both statutes the salary is " fixed " by reference to the amount " paid " without anything to indicate that the salary thus ascertained was subject to reduction upon the happening of any event. It is undoubtedly true that the intention of the Legislature is, if possible, to be ascertained and then followed in the construction of statutes. (*People* v. *Draper*, 15

N. Y., 532; *Holmes* v. *Carley*, 31 id., 289.)   In this case there seems no obscurity and we are permitted to follow the plain reading of the law as best indicating the intention of its makers.

The order should be affirmed.

All concur.

Order affirmed.